All right. Our fourth case for this morning is Donald Miller and John McGuire v. Chicago Transit Authority v. Donald Bonds. Mr. Hemenway. Good morning, Your Honor. May it please the Court, my name is David Hemenway. I'm here on behalf of the plaintiffs, Donald Miller and John McGuire. I understand I have a difficult task ahead of me today, and I just appreciate the opportunity to be heard. I'm first going to address the district court's denial of my motion for an extension of time under 6B1B, and then move on to the denial of summary judgment on the retaliation claims. Because those are the only claims based on the record before you that I can plausibly argue for reversal if you do not agree with me with respect to the first issue. The motion for the extension of time under 6B1B is reviewed under an abuse of discretion standard. The district court found that I did not show excusable neglect as it's defined under the Pioneer Investment Service. And you agree that Pioneer sets the rules for these kinds of claims? Very definitely, because what it says is any time that excusable and that shows up in the federal rule, that it does apply. Those four elements that the court is to look at are the danger of prejudice to the other party, the length of the delay, its impact on judicial proceedings, the reasons for the delay, including whether it was in the reasonable control of the movement, and whether the movement acted in good faith. If you look at the district court's opinion on the 6B1B motion, the court focused almost exclusively on the reasons for the delay and whether they were in my control. I will dispense with the pretext that it's plain. These are my actions. Now, I'm not saying that she didn't listen to hear those, but I do want to address all four of the elements. The first is the danger of prejudice to the other party. Whenever there is a delay, a significant delay, in this one there was a 42-day delay, that's significant. However, in this case, the impact on the defendant, the prejudiced defendant, was not, they would have still had an opportunity to fully brief the motion. The trial date was not scheduled until August. But they had already filed their reply. They were trying to comply with the judge's schedule, and they filed a reply brief. They'd have to go back and redo it in light of whatever it was your submission might have said. So it doesn't seem to me this is a zero prejudice situation. No, no, and I'm not going to pretend that it is. Just that the court allowed me to file that, the response, the summary judgment response of materials, I certainly would not have tried to, expected them to be able to another chance to file a reply to that matter. So my only point is in terms of the prejudice to the overall case was not, to the defendant was not significant. I'm not downplaying it, but it was not a real prejudice as it might be in another case. The length of delay and its impact on the judicial proceedings. This case was a 2017 case, and it was 2020. Now again, there was a suggestion by defendant that I was pointing to them filing two motions to dismiss as some sort of attempt to blame them for the length of the case. That's not true at all. But this wasn't the only extension that you had gotten. First of all, you had gotten a Then you came in. I mean, the court has a lot of cases on the docket. The court needs to manage it, and you weren't maintaining any kind of line of communication with the court. Yes, yes, and again, that's in the record there, and I can't contradict it. One of the things going on here is there's a reticence on my part to talk a lot about the condition, medical condition. I suppose I probably could have done something in camera because it's something that I really don't want to have public. You could have filed something with a request for confidentiality. I can't believe the court wouldn't have respected that. And that is true, and that's something that I can't contradict. And it's very hard for us, since there's no record, to evaluate whether this was something worthy of overriding a district court's exercise of her discretion to manage the docket or whether it wasn't. Well, I can address that when I get to the second court where I'm addressing the retaliation claim, because I just think even in the papers filed by defendant that it does show that there was something there. So just to finish up on the first issue, the other thing there is there's no suggestion in the district court's opinion that she disbelieved what I was telling her about the reasons for the delay or that there was a lack of good faith. In fact, she did make a statement that she wasn't saying that my actions were improper, but simply that the excuses were not, I was not able to establish excusable neglect. And the burden was on you to do that. Yes, yes it was. I think at this point I'd like to turn to the second issue, and that is the retaliation. This is one of those rare cases where the timing is so suspicious, the temporal proximity is so suspicious that it does warrant a trial on that issue. You have Mr. McGuire complaining to the head of the EEO department on January 28th that he was being discriminated against by Mr. Bonds. You have Mr. Miller emailing her, and again this is Rita Capadia, is the EEO director. Her job is to take complaints of discrimination and retaliation. What about all the prelude to this that's brought up in the defendant's facts that Mr. Bond had been unhappy with their performance? I mean, it's not like this was the first day he ever heard of them. This is one of those cases where even if, because obviously I can't contradict that because I couldn't file the response materials, but this is one of those cases where even if the record shows that they can establish a legitimate non-discriminatory reason, the inference from the temporal timing is so strong. And I'm not talking just about when the complaint was filed and when they were terminated, I'm talking about when he scheduled their termination meetings. They were scheduled, the meetings that they scheduled with Ms. Capadia were scheduled to happen at 10 o'clock and 11 o'clock. But we don't know if Mr. Bonds even knew that this other strand of things was going on. He had been following them, I remember with this air conditioning on the buses business and some other things that stick in my mind, so if Mr. Bonds didn't know anything and he's just like, I've had it with these people, I'm going to schedule their exit interviews, so to speak. I don't know where the inference of retaliation comes from. Well, I think it just comes again from the fact that he scheduled those termination meetings. We are entitled to the inference that he scheduled them after Mr. Miller made his complaint to Ms. Capadia. Well, we know from a timing point of view, but is there a link? I mean, is he even aware of what Mr. Miller has been doing? The EEO departments usually operate in a fairly insulated way for this reason, really. I think it's just, again, when you look at the fact that he scheduled their termination meetings the morning directly before they were supposed to meet with Ms. Capadia, the EEO director, that that, in this case, that that's just strong enough to raise the inference of a retaliation between the two. I would like to reserve the rest of my time for- All right, that's fine. Ms. Dmitrieva. Sounds like a patronymic. Good morning, your honors, and may it please the court. I'm Irina Dmitrieva on behalf of both defendant, the Chicago Transit Authority, and individual defendant, Donald Barnes, the CTA's chief transit officer.            Ms. Dmitrieva. Ms. Dmitrieva. Ms. Dmitrieva. Ms. Dmitrieva. I ask that the court affirm summary judgment in both defendants' favor, because the district court acted well within its discretion in not granting the plaintiff's belated motion to extend deadline that was already twice extended in this case, and there is, on the record that is before this court, there is no evidence on which a reasonable jury could between the plaintiff's terminations and their complaints to Rita Cappadia of the CTA's internal Equal Employment Opportunity Department. First, this court has repeatedly held that district court judges have a strong interest in maintaining the integrity of their docket in managing their caseload, and on the facts of this case, looking at the record as a whole, the district judge's decision was entirely reasonable. The district judge granted two extensions of time to the plaintiff to respond to the summary judgment motion. Each extension was 14 days long. So the plaintiffs had a total of 59 days to respond to the summary judgment motion. In a plethora of cases before this court, considering the same issue, the court held that a two-month period of time was an adequate period of time to respond to summary judgment motion. And after having been given this time, counsel waited for six weeks to file his belated request to excuse his noncompliance with the filing deadline, and even on that date, when he filed the motion on January 13, it was not a motion for leave to file and stand. It was yet again a motion for another extension until January 21 to file the response. So actually, there is no response in the record that would have been accepted by the district court. The district court took an issue with the counsel neglecting to mention or to communicate his difficulties to the court in mid-December, on December 17, when the parties were in contact with the court via email regarding the setting of the agreed-upon trial date. The district court, during the hearing on the extension motion, stated that if that issue was broached somehow in that context in mid-December, she would have looked at it more favorably, but there was zero communication for six weeks between the due date and January 13. And none of the reasons that counsel proffered explained why it wasn't possible for him to at least communicate, as the district court said, via email, via text, to the opposing counsel and the district court, that he indeed required this additional time. And it was not, unfortunately, an isolated incident. We listed in our brief at least three other occasions on which counsel didn't let the filing deadlines go and didn't request extensions until after the deadline had passed, which prompted the district court early in the litigation to warn that motions for extensions of time should be filed before any relevant due dates, not after, and that warning was not heeded. So we certainly believe that based on case law of the circuit, Keaton, Raymond, Gonzalez, that as the district court put it, it just comes nowhere close on the facts of this case to constitute excusable neglect. And therefore, the district court properly relied only on the CTA's submissions in ruling on the summary judgment motion. With respect to the merits, we want to emphasize that plaintiffs do not challenge dismissal of their reverse racial discrimination claims, which included the district court's holding that the CTA had legitimate reasons for terminating plaintiffs' employment and that those reasons were not pretextual. And indeed, just now, in arguing before this court, counsel admitted that the record indeed establishes a non-discriminatory reason for plaintiffs' terminations, and that is, in a sense, the ultimate reason why plaintiffs' retaliation claims fail. Because even if we assume, for purposes of argument, that they established prima facie a case, which with suspicious time and temporal proximity would come into issue, which they did not establish, but even if we assume it was incumbent upon the plaintiffs in the context of summary judgment to come forward with a rebuttal of the CTA's legitimate non-retaliatory reason for their discharge, and that reason was their poor job performance. And this reason has clear support in the record. There are emails in the record in which a defendant, Barnes, communicates to McGuire and Miller his displeasure with the mechanical issues on the buses in the spring and summer of 2016. There is a testimony from then-chief of staff of the CTA, Sylvia Garcia, stating that the CTA president's office felt it's been lied to by Mr. McGuire about the preparedness of the bus fleet for the summer months, that McGuire provided overly optimistic, inaccurate reports to the president's office, and that he had to suffer consequences about it. There is evidence in the record that the garage under Defendant Miller's purview had a disproportionate number of mechanical issues on the buses, and it is quite stunning that plaintiffs have nothing to say in response to those legitimate reasons, and ultimately that is undisputed in the record, that there was legitimate non-discriminatory reason for their discharge. And going back to the prima facie case, temporal proximity, this court has held on a number of occasions that mere temporal proximity is not enough in the context of summary judgment. There has to be some corroborating evidence. The Stomanovich stands for this proposition, Lewis and Halsam. The mere fact that one event preceded another does nothing to prove that the first event caused the second, especially because there is affirmative evidence in the record that Defendant Barnes was not aware of plaintiffs' complaints prior to termination meetings. And testimony is completely consistent. Barnes testified he did not know about complaints prior to termination meeting. Both plaintiffs testified they told nobody about their contacts with Kapadia, and they did not share the details of their Outlook mail, Outlook calendars with anybody. The appointments, right? Sorry? The appointments that were sent by Outlook, yes. And Ms. Kapadia, the CTA's then-EO officer, also consistently testified that she did not copy Barnes on her Outlook calendar meeting invitations to plaintiffs. She did not share details of her Outlook calendars with anybody, and she told Barnes about plaintiffs' complaints only after they had been terminated. So there is absolutely nothing in the record of this case that would allow a reasonable jury to conclude that the terminations were in retaliations for their complaints rather than based on legitimate non-retaliatory reasons. And for all these reasons, we ask this Court that the summary judgment of both defendants' favor be affirmed. All right. Thank you very much. Thank you. Anything further, Mr. Hemingway? Just briefly, Your Honor. Again, I think the point I just want to stress is there are, there are those limited number of cases where the temporal, the sequencing is so suspicious that that is sufficient to overcome even in a case where, this case where there has been a legitimate non-discriminatory reason posited by a defendant. I believe that this case is one of those, given not only the proximity between the complaints but also the timing of the scheduling of their termination meetings. I just also do want to address briefly with respect to Mr. Miller and his protected activity, I do think that his, that when someone complains to EEO and saying, I'm being targeted by somebody, that that is, that is a complaint of discrimination and should be accepted as such. I do appreciate the time to speak for you today. Thank you. One final question, Mr. Hemingway. Sure, sure. Why not raise the topic of the reasons for the failures to respond in the December 17th trial, phone conference where you talk about setting the trial date? Again, Judge, that goes to the whole situation that was going on with me. I describe myself as being overwhelmed, and so that is, that's the reason that I would give you for that. Thank you. Okay. I just wanted, what I am looking for, Judge, is for the court to reverse the district court's denial of the 6B1 motion and remand the court, the case to court for further summary judgment proceedings or in the alternative, reverse the district court's finding of, that there was no, no retaliation. Okay. I think we understand what you're asking for. All right. Thank you. Thank you very much. Thanks to both counsel. The court will take the case under advisement.